UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

**TAMMIE MAXWELL,**
*individually and on behalf of*
*all others similarly situated*,

    **Plaintiff,**

v.   Case No. _____

**UNITED SERVICES AUTOMOBILE**
**ASSOCIATION, and**
**USAA SAVINGS BANK,**

    **Defendants.**

## PLAINTIFF'S ORIGINAL CLASS ACTION COMPLAINT

COMES NOW Plaintiff, Tammie Maxwell, by her undersigned Counsel, for her Complaint against Defendants United Services Automobile Association and USAA Savings Bank (hereinafter collectively "USAA" or "Defendants") alleges as follows:

### I.   INTRODUCTION.

1. Plaintiff Tammie Maxwell brings this Complaint for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of USAA in negligently and/or intentionally contacting Plaintiff on her cellular telephone in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), thereby invading Plaintiff's privacy and causing her severe emotional distress.

2. Plaintiff further brings claims under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681a–x ("FCRA"), for USAA's reporting of inaccurate information about a USAA account that did not belong to Plaintiff and for USAA's failure to reasonably investigate Plaintiff's disputes of that account.

3. Plaintiff also asserts claims against USAA for violations of 26 U.S.C. § 7434, as USAA filed with the Internal Revenue Service a fraudulent information return in which USAA reported that it had cancelled a debt Plaintiff owed to USAA. Plaintiff owed no such debt, but USAA's actions caused Plaintiff to incur tax liability for which she was not legally responsible. USAA knew this, yet it reported to the IRS that it forgave the debt on behalf of Plaintiff anyway.

4. Before the enactment of the FCRA, inaccurate and misleading information was identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec. 2411 (Jan. 31, 1969). With this problem in mind, Congress enacted the FCRA in 1970 to ensure the "confidentiality, accuracy, relevancy, and proper utilization" of credit reports. 15 U.S.C. § 1681(b).

5. To accomplish Congress' goals, the FCRA contains a variety of requirements to protect consumers, including the requirements that furnishers of information like USAA reasonably investigate consumers' disputes of information the furnishers forward to consumer reporting agencies ("CRAs"). Under § 1681s-2(b), furnishers who receive a dispute of information from the CRAs must conduct a reasonable, searching investigation of the dispute and eliminate from a consumer's report any information the furnisher cannot verify.

6. The CRAs transmit the dispute information to furnishers through an electronic network known as e-Oscar, using automated forms called automated consumer dispute verifications ("ACDVs"). Plaintiff disputed USAA's reporting to each CRA, which sent ACDVs to USAA through e-Oscar. USAA's investigation of Plaintiff's disputes was perfunctory, falling short of the reasonableness standards the FCRA demands. USAA repeatedly fell short of its statutory obligations when it verified as belonging to Plaintiff a balance on a USAA account

2

which belonged solely to her husband, which she knew nothing about, and never agreed to accept any obligation under.

7. Consumer protection is likewise the reason for Congress to enact the TCPA. "Voluminous consumer complaints about abuses of telephone technology—for example, computerized calls dispatched to private homes—prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 370–71 (2012).

8. In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them, and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer. TCPA, Pub.L. No. 102–243, § 11. Toward this end, Congress found that:

> Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id.* § 12; *see also Martin v. Leading Edge Recovery Sols., LLC*, No. 11 C 5886, 2012 WL 3292838, at* 4 (N.D. Ill. Aug. 10, 2012) (citing Congressional findings on TCPA's purpose).

9. Congress also specifically found that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call . . ." *Id.* §§ 12–13; *see also*, *Mims*, 565 U.S. at 371.

10. Among other things, the TCPA prohibits calls such as those described herein to cellular telephones using an automatic telephone dialing system ("ATDS") without the prior express consent of the party receiving the call.

11. While many violations are described below with specificity, this Complaint alleges violations of the aforementioned statutes cited in their entirety.

12. Any violations by USAA were committed knowingly, willfully, and intentionally, and Defendant did not maintain procedures reasonably adapted to avoid any such violations.

13. Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendant.

## II. PARTIES.

14. Plaintiff, Tammie Maxwell, is a natural citizen of Tennessee, residing in the city of Clarksville. Plaintiff is a "consumer" as defined in and protected by the TCPA and FCRA.

15. Defendant USAA is a Texas for-profit entity which conducts business in the State of Tennessee.

16. Defendant USAA Savings Bank is a Texas for-profit entity which conducts business in the State of Tennessee.

## III. JURISDICTION AND VENUE.

17. The Court has subject matter jurisdiction over Plaintiff's claims brought under the TCPA and FCRA. 28 U.S.C. § 1331.

18. This Court has personal jurisdiction over Defendant because it conducts business in the State of Tennessee, and a substantial part of the wrongful acts alleged in this Complaint were committed in this Judicial District.

19. Venue is proper because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Clarksville, Tennessee which is part of this Judicial District.

## IV. FACTUAL ALLEGATIONS.

A. **USAA's TCPA Violations.**

20. USAA is primarily an insurance company, but it offers other services like banking and credit cards to its customers. Most of those customers are or have served in the United States military, one of USAA's key marketing demographics.

21. Plaintiff's husband, Walter Brian Maxwell, opened a credit card account with USAA some time in 1984. Plaintiff knew nothing about this account, was not included in any of the application paperwork, was not an authorized user, and never paid any of the bills associated with that account.

22. In 2015, Plaintiff's husband committed suicide, due in large part to his struggles with post-traumatic-stress syndrome associated with his military service. At the time of his death, his USAA credit-card account balance was $14,881. Plaintiff knew nothing at all about this account during her husband's lifetime.

23. After her husband's death, Plaintiff began receiving calls to her cellular phone from USAA representatives inquiring about her paying down the credit-card debt. Plaintiff responded that she knew nothing about the debt. These calls continued throughout 2015, 2016, 2017, and 2018.

24. USAA's representatives called Plaintiff on her cellular telephone using a prohibited automatic telephone dialing system ("ATDS"). Plaintiff is able to make this determination because for all of USAA's calls she can remember, there was a pause of several seconds after she answered and spoke, after which USAA's representative would then speak. Such circumstances are indicative of the caller's use of an ATDS. *Wilson v. Quest Diagnostics Inc.*, No. CV 2:18-11960, 2018 WL 6600096, at *4 (D.N.J. Dec. 17, 2018).

25. These calls occurred during all times of the day and evening, sometimes multiple times a day. With each call, Plaintiff was reminded of her husband's tragic death, which caused her great emotional distress.

26. Plaintiff never consented to being called by USAA, as she knew nothing about the USAA account, did not provide any information—including her cellular telephone number—on an application or to USAA otherwise, never used the account, and never agreed to be legally liable on the account.

27. Even had Plaintiff provided her express consent to be called, she expressly revoked it. During several of these calls, Plaintiff told the USAA representative to stop calling. USAA still did not stop calling. In all, USAA called Plaintiff on her cellular phone more than 100 times.

28. USAA did not obtain prior express consent to call Plaintiff on her Cellular Phone for purposes of attempting to collect the Debt. Alternatively, even if USAA did have prior express consent to make TCPA regulated calls to Plaintiff's cellular phone, said prior express consent was explicitly revoked by the Plaintiff via repeated and unequivocal requests to cease calling her on her cellular phone.

29. USAA is responsible for making the above-described ATDS-generated and/or automated or prerecorded calls. Assuming the calls were made by a third-party hired by USAA, USAA remains responsible for the conduct of such calling agent under the doctrine of *respondeat superior*.

30. Discovery will show the ATDS used by USAA has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

6
Case 3:19-cv-00340   Document 1   Filed 04/26/19   Page 6 of 19 PageID #: 6

31. Discovery will further confirm that the ATDS used by USAA also has the capacity to, and does, dial telephone numbers stored as a list or in a database without human intervention.

32. Through USAA's aforementioned conduct, Plaintiff suffered an invasion of a legally protected interest in privacy, which is specifically addressed and protected by the TCPA.

33. Plaintiff was personally affected by USAA's aforementioned conduct because Plaintiff was frustrated and distressed that USAA interrupted Plaintiff with unwanted automated calls to Plaintiff's cellular phone.

34. USAA's calls forced Plaintiff to live without the utility of her cellular phone by occupying it with numerous unwanted calls, causing a nuisance and lost time.

35. Plaintiff has been damaged by these illegal calls because her privacy was improperly invaded, minutes were used from her cellular telephone plans, and she was forced to spend time tending to unwanted calls. *See Martin v. Leading Edge Recovery Sols., LLC*, No. 11 C 5886, 2012 WL 3292838, at *4–5 (N.D. Ill. Aug. 10, 2012). Furthermore, Plaintiff also incurred injury including but not limited to emotional distress and value of time spent in an attempt to resolve this dispute with USAA incurred as a direct result of USAA's actions.

36. The TCPA was enacted nearly three decades ago, providing USAA with more than ample time to bring its calling practices within the Act's strictures. USAA also has multiple legal resources available to it that would allow it to learn of the Act's requirements and bring its processes and practices into compliance.

37. The violations alleged herein were therefore willful or knowing, subjecting USAA to treble damages under the TCPA.

### B. USAA's Violations Of The FCRA And Fraudulent Tax Reporting.

38. In early 2018, Plaintiff obtained her credit reports from Equifax, Experian, and Trans Union, each of which reported that the USAA account was hers, and that the balance she owed on the account was $14,881. None of this is correct.

39. Plaintiff disputed the USAA account in writing with all three CRAs. In turn, they communicated Plaintiff's dispute to USAA by ACDV using the e-Oscar system. This transmission of Plaintiff's disputes to USAA triggered USAA's statutory obligation to conduct a searching, genuine inquiry into Plaintiff's disputes.

40. USAA did not, instead merely parroting-back to the CRAs the same inaccurate information in its computer system. USAA reported to the CRAs it had verified that the account belonged to Plaintiff and that she owed the balance of $14,881. This conclusion is legally impossible, as Plaintiff had no idea the account existed, that her husband had accrued such a debt, or that she had any obligation to pay it. In fact, Plaintiff has no obligation on her husband's separately accrued debt.

41. After Plaintiff's disputes, each of the CRAs continued reporting the USAA account with a past due balance attributable to Plaintiff.

42. Adding insult to injury, at the end of 2018 USAA placed the account in charge-off status. It then issued to Plaintiff a Form 1099-C for the 2018 tax year, indicating that it had cancelled the $14,881 debt. USAA reported this same figure to the IRS, which caused Plaintiff to incur tax liability for the debt even though she was never legally obligated to pay it.

43. Discovery will show that on one or more occasions the CRAs forwarded Plaintiff's disputes to USAA. Discovery will further show that USAA was provided notice of

8
Case 3:19-cv-00340   Document 1   Filed 04/26/19   Page 8 of 19 PageID #: 8

Plaintiff's disputes and despite this notice, failed and refused to investigate and correct its inaccurate reporting.

44. USAA's inaccurate reporting of the account as belonging to Plaintiff and with a $14,881 balance as due and owing was willful. USAA knew or had sufficient information to alert it that the account did not belong to Plaintiff. Yet USAA soldiered on, repeatedly verifying the account as belonging to Plaintiff.

## V. CLASS ACTION ALLEGATIONS.

45. Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings her TCPA claims for herself and on behalf of a class of consumers defined as:

> All natural persons in the United States (including all Territories and Political Subdivisions of the United States) to whom: (1) USAA or anyone acting on USAA's behalf; (2) placed calls for non-emergency purposes; (3) to those persons' cellular telephones; (4) using an ATDS; and (5) for whom USAA did not have prior express consent for making such calls.

46. **Numerosity, Fed. R. Civ. P 23(a)(1).** Discovery will confirm that the putative Class numbers in at least the thousands. USAA operates nationally, and discovery will show that it calls thousands of consumers in the same way it called Plaintiff every day. Additionally, the names and addresses of the Class Members are identifiable through the internal business records maintained by USAA and any calling vendors it employs, and the Class Members may be notified of the pendency of this action by published and/or mailed notice.

47. **Predominance of Common Questions of Law and Fact, Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all members of the putative class, and there are no factual or legal issues that differ between the putative Class Members. These common questions predominate over the questions affecting only individual class members. The common questions include: (1) whether USAA used an ATDS to place calls to cellular phones;

(2) whether USAA had prior express consent from call recipients to make those calls; (3) whether USAA made the calls willfully; and (4) what is the proper recovery for Plaintiff and the Class Members.

48. **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each putative Class Member. Plaintiff is entitled to relief under the same cause of action as the other members of the putative Class. Additionally, Plaintiff's claims are based on the same facts and legal theories as each of the Class Members.

49. **Adequacy of Representation, Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate representative of the putative Class because her interests coincide with, and are not antagonistic to, the interests of the members of the Class she seeks to represent. Plaintiff has retained counsel competent and experienced in such litigation, and they intend to continue to prosecute the action vigorously. Plaintiff and her Counsel will fairly and adequately protect the interests of the members of the Class. Neither Plaintiff nor her Counsel have any interests that might cause them to not vigorously pursue this action.

50. **Superiority, Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the Class Members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them. Even if the members of the class themselves could afford such individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court

system presented by the legal and factual issues raised by USAA's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

51. **Injunctive Relief Appropriate for the Class**, **Fed. R. Civ. P. 23(b)(2).** Class certification is appropriate because USAA acted on grounds generally applicable to the Class, making appropriate injunctive relief with respect to Plaintiff and the Class Members. Plaintiff and the putative class seek an injunction ordering USAA to arrange its calling procedures so that it complies with the TCPA.

52. All of the calls made by USAA to cellular telephones were made using an impermissible ATDS. USAA therefore violated the TCPA with every call it made to consumers for which it had no express consent to make.

53. Plaintiff and the Class Members were injured as a result of USAA's violations of the TCPA because their privacy was invaded, their cellular phones improperly used with the making of the prohibited calls, and their lives interrupted by incessant robocalls.

54. USAA willfully made these illegal calls, entitling Plaintiff and Class Members to treble damages under the TCPA of $1,500 per call.

## VI. CAUSES OF ACTION.

### COUNT 1: CLASS CLAIM
### VIOLATIONS OF THE TCPA – 47 U.S.C. § 227(b)(1)(A).

55. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding Paragraphs.

56. The foregoing acts and omissions of USAA and/or its affiliates, agents, and/or other persons or entities acting on USAA's behalf constitute numerous and multiple violations of

the TCPA, 47 U.S.C. § 227(b)(1)(A), by making calls, except for emergency purposes, to the cellular telephone of Plaintiff using an ATDS and/or artificial or prerecorded voice.

57. As a result of the USAA's and/or its affiliates, agents, and/or other persons or entities acting on USAA's behalf violations of 47 U.S.C. § 227(b)(1)(A), Plaintiff presumptively is entitled to an award of $500 in statutory damages for each and every call to her cellular telephone numbers using and ATDS and/or artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

58. Plaintiff and Class Members are also entitled to and do seek injunctive relief prohibiting the Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from violating the TCPA, 47 U.S.C. § 227(b)(1)(A), by making calls, except for emergency purposes, to any cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

## COUNT 2: CLASS CLAIM
## KNOWING AND/OR WILLFUL
## VIOLATIONS OF THE TCPA – 47 U.S.C. § 227(b)(1)(A)

59. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

60. The foregoing acts and omissions of the USAA and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple knowing and/or willful violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiff using an ATDS and/or artificial or prerecorded voice.

61. As a result of the USAA and/or its affiliates, agents, and/or other persons or entities acting on USAA's behalf knowing and/or willful violations of the TCPA, 47 U.S.C.

§ 227(b)(1)(A), Plaintiff and Class Members are entitled to treble damages of up to $1,500 for each and every call to her cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(C).

62. Plaintiff is also entitled to and do seek injunctive relief prohibiting USAA and/or its affiliates, agents, and/or other persons or entities acting on USAA's behalf from violating the TCPA, 47 U.S.C. § 227(b)(1)(A), by making calls, except for emergency purposes, to any cellular telephone numbers using an ATDS and/or artificial or prerecorded in the future.

### COUNT 3: INDIVIDUAL CLAIM
### VIOLATION OF THE FCRA – 15 U.S.C. § 1681s-2(b)(1)(A), (B)

63. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

64. On one or more occasions within the two years prior to the filing of this suit, by example only and without limitation, USAA violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's disputes.

65. On one or more occasions within the past two years, by example only and without limitation, USAA violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information provided by the CRAs.

66. When Plaintiff mailed her disputes to the CRAs, they use a dispute system named "e-Oscar", which has been adopted by the credit reporting agencies and their furnisher customers such as USAA. It is an automated system and the procedures used by the CRA's are systemic and uniform.

67. When a CRA receives a consumer dispute, it (usually via an offshore outsource vendor), translates that dispute into an "ACDV" form.

68. The ACDV form is the method by which USAA has elected to receive consumer disputes pursuant to 15 U.S.C. §1681i(a).

69. Based on the manner in which each CRA responded—or did not respond— to each of Plaintiff's disputes, representing that USAA had "verified" the supposed accuracy of its reporting, Plaintiff alleges that the CRAs did in fact forward the Plaintiff's dispute via an ACDV to USAA.

70. USAA understood the nature of Plaintiff's disputes when it received the ACDVs from the CRAs.

71. When USAA received the ACDV's from the CRAs, it could have reviewed its own system and previous communications with Plaintiff and discovered additional substance of Plaintiff's dispute.

72. Notwithstanding the above, USAA followed a standard and systemically unlawful process when it received the ACDV disputes. Basically, discovery will show, all USAA does is review its own internal computer screen for the account and repeat back to the ACDV system the same information USAA already had reported to the CRAs.

73. When U.S. Bank receives a consumer's dispute through e-Oscar, it does not conduct a substantive review of any sort to determine whether or not the information already in its computer system is itself accurate.

74. As a result of USAA's violations of 15 U.S.C. § 1681s-2(b)(1)(A) and (B), Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

75. The violations by USAA were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, USAA was negligent entitling the Plaintiff to recovery under 15 U.S.C. §1681o.

76. The prevailing law nationally has long been to require a detailed and searching investigation by a creditor when it receives a consumer's FCRA dispute through a CRA. *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 616 (6th Cir. 2012).

77. USAA was aware of the required standards, having been the defendants in the Sixth Circuit's 2012 decision adopting the detailed and searching investigation standards, *see id.*, when it followed the ACDV procedures used regarding Plaintiff's disputes.

78. Discovery will show that the procedures USAA followed regarding the Plaintiff's FCRA disputes through e-Oscar were the procedures that USAA intended its employees or agents to follow.

79. Plaintiff is entitled to recover her actual damages, statutory damages, punitive damages, costs and attorney's fees from USAA in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

### COUNT 4: INDIVIDUAL CLAIM
### VIOLATION OF THE FCRA – 15 U.S.C. § 1681s-2(b)(1)(C), (D)

80. Plaintiff realleges and incorporates all other factual allegations set forth in the Complaint (particularly though not limited to as pleaded in the "Fact" section of the Complaint and previous Counts).

81. On one or more occasions within the past two years, by example only and without limitation, USAA violated 15 U.S.C. § 1681s-2(b)(1)(C) and (D) by publishing the USAA representation within Plaintiff's credit files with the CRAs without also including a notation that

this debt was disputed and by failing to correctly report results of an accurate investigation to each credit reporting agency.

82. Specifically, USAA failed to add the "XB" code to the CCC (Compliance Condition Code) field in the ACDV dispute forms when it responded to the CRAs regarding Plaintiff's disputes.

83. Discovery will show that USAA rarely if ever adds the XB code or other notation that an account is disputed when it responds to e-Oscar ACDVs.

84. Plaintiff's dispute was, at a minimum, *bona fide*.

85. These violations by USAA were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

86. USAA was aware of the *Boggio* FCRA decision by the Sixth Circuit when it followed the ACDV procedures used regarding the Plaintiff's disputes.

87. Discovery will show that the procedures followed regarding the Plaintiff's FCRA disputes through e-Oscar were the procedures that USAA intended its employees or agents to follow.

88. Discovery will confirm that USAA's employees or agents did not make a mistake (in the way in which he or she followed USAA's procedures) when he or she received, processed and responded to the CRAs' ACDVs and did not include the XB code in the CCC field.

89. Discovery will further show that USAA has not materially changed its FCRA investigation procedures regarding the CCC field in ACDVs after learning of its failures in this case.

90. In the alternative, USAA was negligent, which entitles Plaintiff to recover under 15 U.S.C. §1681o.

16
Case 3:19-cv-00340  Document 1  Filed 04/26/19  Page 16 of 19 PageID #: 16

91. As a result of USAA's violations of 15 U.S.C. § 1681s-2(b)(1)(C) and (D), the Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

92. The violations by USAA were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, USAA was negligent, entitling the Plaintiff to recovery under 15 U.S.C. §1681o.

93. Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs and attorney's fees from USAA in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

### COUNT 5: INDIVIDUAL CLAIM
### FRAUDULENT FILING OF INFORMATION RETURN – 26 U.S.C. § 7434

94. Plaintiff realleges and incorporates all other factual allegations set forth in the Complaint (particularly though not limited to as pleaded in the "Fact" section of the Complaint and previous Counts).

95. In 2019, USAA filed a 1099-C to Plaintiff for tax year 2018, purportedly for its cancellation of debt in the amount of $14,881. Plaintiff received a copy of the form in 2019.

96. The 1099-C is an "information return" as described in 26 U.S.C. § 6724(d)(1)(A).

97. USAA knew or should have known that the debt it cancelled did not belong to Plaintiff and therefore its cancellation of that debt did not constitute income to Plaintiff under the Internal Revenue Code.

98. USAA's reporting required that Plaintiff report the debt cancellation as income on her tax return or risk audit by the Internal Revenue Service ("IRS").

99. The 1099-C issued and filed by USAA was fraudulent because USAA knew that the debt cancellation was not appropriately attributed to Plaintiff. USAA's actions were willful, in that Plaintiff had alerted it to USAA's inaccurate attribution of the debt to Plaintiff.

100. Pursuant to 26 U.S.C. § 7434(d), a copy of the Complaint in this case has been filed with the IRS.

101. As a proximate result of U.S. Bank's willful filing of the false and fraudulent 1099-C, Plaintiff sustained and will sustain the following actual damages:

   a. Increased federal and state tax liability.

   b. Expenditure of time and energy in attempting to correct the 1099-C.

   c. Significant emotional distress, including but not limited to anxiety, fear, worry and frustration.

102. Because of the facts set forth in this Count, the Plaintiff is entitled to entry of an order awarding her judgment against USAA for the greater of her actual or statutory damages pursuant to 26 U.S.C. § 7434(b)(1) and for costs and attorneys' fees pursuant to 26 U.S.C. § 7434(b)(2) and (3).

## VII. PRAYER FOR RELIEF.

**WHEREFORE**, Plaintiff prays for judgment as follows against Defendant:

a) An order certifying this case as a Class action as described in Count 1, with Plaintiff appointed as Class Representative and her undersigned Counsel as Class Counsel;

b) As a result of each and every negligent violation of 47 U.S.C. § 227(b)(1) by Defendant, $500 in statutory damages pursuant to 47 U.S.C. § 227(b)(3)(B) for each call made to Plaintiff and Class Members;

c) As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227(b)(1), $1,500 in statutory damages for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) for each call made to Plaintiff and Class Members;

d) Injunctive relief prohibiting such conduct in the future, pursuant to 47 U.S.C. § 227(b)(3)(A);

e) As a result of Defendant's violations of 15 U.S.C. § 1681s-2(b), an award of actual damages, in an amount to be determined at trial;

f) An award of statutory damages of $1,000, pursuant to 15 U.S.C. § 1681s-2(b);

g) An award of costs of litigation and reasonable attorneys' fees, pursuant to 15 U.S.C. § 1681n or o; and

h) Prejudgment interest;

i) Costs; and

j) Any other relief, including equitable relief, the Court may deem just and proper.

TRIAL BY JURY IS HEREBY DEMANDED.

Dated: April 26, 2019.

Respectfully submitted,

*/S/ T . BLAINE DIXON*
T. Blaine Dixon, BPR # 026270
U.S. Consumer Law, PLLC
664 Sango Road
Clarksville, TN 37043,
Telephone: (615) 440-3746

*/S/ WILLIAM M. KALUDIS*
William M. Kaludis, BPR #017433
Attorney for Plaintiff
1230 2nd Ave. S.
Nashville, TN 37210-4110
Telephone: (615) 742-8020